IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
2nd

DEXTER BRUNSON                                                                                    PLAINTIFF

v.                                         CASE NO. 35CV-17-725

SANTANDER CONSUMER
USA, INC.                                                                                          DEFENDANT

## CLASS ACTION COMPLAINT

Plaintiff Dexter Brunson ("Mr. Brunson"), through undersigned counsel, individually and on behalf of all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding himself and on information and belief as to other allegations.

## INTRODUCTION

1.      This is a civil action seeking monetary damages and restitution from Defendant Santander Consumer USA, Inc. ("Santander" or "Defendant") for violating the Arkansas Constitution and Arkansas Deceptive Trade Practices Act ("ADTPA") by making loans bearing usurious interest rates to Arkansas consumers.

2.      Santander routinely preys upon Arkansas consumers by extending usurious loans to them via installment contracts for motor vehicles (the "Contract"). These loans provide for interest rates that are in excess of Arkansas's usury caps. Indeed, Mr. Brunson was charged an Annual Percentage Rate of 20.61%, which is 21% greater than the maximum amount that can be legally charged on a consumer loan in the State of Arkansas.

3.      Mr. Brunson purchased his vehicle in Arkansas from an Arkansas car dealer, and all payments were drawn from his bank account in Arkansas. No state other than Arkansas has a legal interest in the terms, formation, and performance of this Contract. In drafting the Contract, however, Santander inserted a Texas choice-of-law provision. Upon information and belief,

1

FILED IN MY OFFICE AND SUMMONS
ISSUED AT 11:26 O'CLOCK A M
9-25-17            DATE
LAFAYETTE WOODS, SR., CLERK
Lisa Jones  D.C.

Santander routinely inserts Texas choice-of-law provisions into its Contracts with Arkansas consumers in violation of A.C.A. § 4-1-301(1), which requires a choice of law provision to bear a reasonable relation to the transaction.

4. First, consumers like Mr. Brunson have no ability to agree upon which state's law will govern the transaction. Instead, they are presented with a boilerplate, "take-it-or-leave it" Contract that already contains a choice-of-law provision. Second, the State of Texas does not bear a reasonable relation to these transactions. Mr. Brunson's Contract involved two parties, both of whom are Arkansas residents. Mr. Brunson made a down payment in cash and paid in this county to an Arkansas entity. Indeed, the entire performance of this Contract occurred within the State of Arkansas. *See Evans v. Harry Robinson Pontiac-Buick, Inc.*, 336 Ark. 155, 983 S.W.2d 946 (1999) ("In determining whether a reasonable relationship exists between [a state] and the retail installment contract at issue . . . a court should look at where the transaction originated, where payments under the transaction were sent, and where the parties to the contract were located.")

5. The Contract violates a fundamental public policy of Arkansas—the State's constitutional bar against interest rates in excess of 17%. Defendant's use of a choice-of-law provision does not manufacture a tie to the state of Texas in the Contract, and the provision should not be allowed to circumvent Arkansas law. *See Cooper v. Cherokee Village Development Co.*, 236 Ark. 37, 364 S.W.2d 158 (1963) (Discussing implications of using a choice-of-law provision as "a cloak for usury.").

6. "[T]he purpose of Arkansas's strong anti-usury policy, as reflected by the prohibition of usury in our constitution, is to protect borrowers from excessive interest rates." *State ex rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999); *see also Quinn-*

*Moore v. Lambert*, 272 Ark. 324, 614 S.W.2d 230 (1981) ("As far as we know, usury laws exist in all the states. . . . Such laws are based upon a universally recognized public policy that protects necessitous borrowers from the exaction of exorbitant interest by unscrupulous lenders."). Consumers are especially vulnerable to high-interest vehicle installment loans, which have increased by 130% over the past several years.[1] A study conducted by the New York Times highlighted the features and consequences of such loans:

> The New York Times examined more than 100 bankruptcy court cases, dozens of civil lawsuits against lenders and hundreds of loan documents and found that subprime auto loans can come with interest rates that can exceed 23 percent. The loans were typically at least twice the size of the value of the used cars purchased, including dozens of battered vehicles with mechanical defects hidden from borrowers. Such loans can thrust already vulnerable borrowers further into debt, even propelling some into bankruptcy, according to the court records, as well as interviews with borrowers and lawyers in 19 states.[2]

7. In flagrant disregard of Arkansas's efforts to protect its residents from high interest loans, Defendant intentionally violates the Arkansas Constitution by extending usurious automobile loans to Arkansans.

8. Defendant's actions also harm Arkansas state-chartered banks. By extending high-interest loans to vulnerable populations, Defendant takes business away from Arkansas banks, which are often better suited to serving local needs. This loss of potential customers is

---

[1] Jessica Silver-Greenberg & Michael Corkery, *In a Subprime Bubble for Used Cars, Borrowers Pay Sky-High Rates*, N.Y. Times, July 19, 2015, available at https://dealbook.nytimes.com/2014/07/19/in-a-subprime-bubble-for-used-cars-unfit-borrowers-pay-sky-high-rates/

[2] *Id.*

substantial, as "25 percent of Arkansas households are using alternative financial services such as payday loans at least some of the time."[3]

## PARTIES

9. Defendant Santander Consumer USA, Inc. is an Illinois corporation that is headquartered in Dallas, Texas. It is a consumer finance company that focuses on vehicle finance and unsecured consumer lending products, and is registered to do business in Arkansas.

10. Plaintiff Dexter Brunson is a resident of Pine Bluff, Jefferson County, Arkansas.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Santander because it does business in Arkansas.

12. Venue is proper because events giving rise to this cause of action occurred within this district. Furthermore, Mr. Brunson is a resident within this district.

## FACTUAL ALLEGATIONS

13. On April 1, 2013, Mr. Brunson entered into a Motor Vehicle Retail Installment Sales Contract ("the Contract") with Smart Auto Group, LLC d/b/a/ Smart Chrysler Dodge Ram Jeep ("Smart Chrysler") for the purchase of a 2010 Dodge Charger. Mr. Brunson bought the vehicle from Smart Chrysler in part due to a desire to do business with a "home-town" car dealer. A copy of the Contract is attached as Exhibit A.

14. A review of the purchase terms highlights the impact of high-interest rates in consumer transactions, and the purpose of the Arkansas Constitutional ban on usury. The total purchase price for the 2010 Dodge Charger was $22,904.

15. Mr. Brunson made a down payment of $2,900.00 in cash towards the price, and financed the remaining $20,004.00 at 20.61%. As a result of this unlawful interest rate, Mr.

---

[3] FEDERAL DEPOSIT INSURANCE CORPORATION, FDIC NATIONAL SURVEY OF UNBANKED AND UNDERBANKED HOUSEHOLDS (2013), available at https://www.fdic.gov/householdsurvey/2013report.pdf.

4

Brunson's payment was $490.37 per month for 72 months. This resulted in total finance charges of $15,302.64, which is an additional 76.4% to the amount financed.

16. The Contract—a standardized form document identified as Form No. 553-TX-SCUSA 2/12—was drafted, offered for acceptance, negotiated, signed, executed, and delivered entirely at Smart Chrysler's corporate offices in Pine Bluff, Jefferson County, Arkansas. In addition, the Contract was between two Arkansas residents because Mr. Brunson is an Arkansas resident and Smart Chrysler is an Arkansas corporation with its principal place of business in Pine Bluff, Jefferson County, Arkansas. Following execution of the Contract, Mr. Brunson delivered a down payment in cash to Smart Chrysler, and Smart Chrysler delivered possession of the vehicle to Mr. Brunson.

17. After the Contract was signed by Mr. Brunson and Smart Chrysler, Smart Chrysler assigned without recourse its interest in the Contract to Santander. As the holder of the Contract, Santander "is subject to all claims and defenses which the debtor could assert against the seller."

18. The Contract provides for an Annual Percentage Rate of 20.61%. In Arkansas, the maximum amount of interest that may be charged for consumer loans is 17%. Ark. Const. 89, § 3; Ark. Code. Ann. § 4-57-104. Santander's loan exceeds this amount by more than 21%.

19. There is no dispute that as a matter of law each payment made by Mr. Brunson was made in the State of Arkansas. Throughout the life of the loan, Santander has drawn payments directly from Mr. Brunson's Bank of America account at 2219 West 28th Avenue in Pine Bluff, Jefferson County, Arkansas. In fact, Mr. Brunson has never mailed a payment to Santander's corporate offices in Texas.

20. In extending a loan bearing an interest rate in excess of Arkansas's constitutional

and statutory caps on interest rates, Santander's loan is usurious. Furthermore, because the Contract was between two Arkansas residents, and drafted, offered for acceptance, negotiated, signed, executed, and delivered entirely in the State of Arkansas, Santander cannot rely on its Texas choice-of-law provision to evade Arkansas law.

21.     As a direct consequence of Santander's wrongful conduct, Mr. Brunson has been making payments for his vehicle in excess of that which he is required to pay under Arkansas law. For these reasons, Mr. Brunson seeks relief for himself and on behalf of a similarly situated class.

## CLASS ALLEGATIONS

22.     Mr. Brunson brings this action individually and on behalf of all others similarly situated pursuant to Arkansas Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

23.     The proposed Class is defined as:

> All persons who are residents of the State of Arkansas who have been charged an interest rate greater than 17% by Santander within the applicable statute of limitations preceding the filing of this action through the date of the filing of this complaint.

24.     Mr. Brunson reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

25.     Excluded from the Class are Santander, its parents, subsidiaries, affiliates, officers and directors, any entity in which Santander has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

26. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identities of whom are within the knowledge of Santander and can be ascertained only by resort to Santander's records.

27. Mr. Brunson's claims are typical of the claims of the Class in that Mr. Brunson, like all Class members, has had to pay for usurious interest rates. Mr. Brunson, like all Class members, has been damaged by Santander's misconduct. Furthermore, the factual basis of Santander's misconduct is common to all Class members, and represents a common thread that establishes the violations of the Arkansas Constitution and the ADTPA.

28. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

29. Among the questions of law and fact common to the Class are:

   a. Whether Santander has extended loans with interest rates that are usurious under Arkansas law;

   b. Whether Santander has violated the Arkansas Deceptive Trade Practices Act by extending loans with interest rates that are usurious under Arkansas law

   c. Whether Santander's Texas choice-of-law provision violates a fundamental public policy of the State of Arkansas

   d. Whether the State of Texas has a substantial relationship with Santander's motor vehicle installment contracts with Arkansas consumers.

30. Mr. Brunson's claims are typical of the claims of other Class members, in that they arise out of the same wrongful policies and practices of the Santander. Mr. Brunson has

7

suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

31. Mr. Brunson is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers. Accordingly, Mr. Brunson is an adequate representative and will fairly and adequately protect the interests of the Class.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Santander, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Santander's misconduct will proceed without remedy.

33. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Violations of Arkansas's Usury Laws
### Ark. Const. Amend. 89, § 3; A.C.A. § 4-57-104

34. Pursuant to Ark. Const. Amendment 89, § 3, the maximum lawful rate of interest on loans or contracts (other than government bonds and loans and loans by certain federally insured depository institutions) shall not exceed seventeen percent (17%) per annum.

35. Each Motor Vehicle Retail Installment Sales Contract facilitated and made by Santander during the Class Period is a "loan or contract" for the purposes of Ark. Const. Amendment 89, § 3.

36. The interest rate, properly calculated, for each of the Motor Vehicle Retail Installment Sales Contracts facilitated and made by Santander during the Class Period was greater than 17%.

37. Accordingly, each and every Motor Vehicle Retail Installment Sales Contract facilitated and made by Santander during the Class Period violated the maximum lawful rate of interest established by Ark. Const. Amendment 89, § 3.

38. Pursuant to Ark. Const. Amendment 89, § 6 (b) each such Motor Vehicle Retail Installment Sales Contract is void as to principal and interest, and Mr. Brunson and each Class Member is entitled to attorney's fees and costs.

39. Pursuant to Ark. Code Ann. §4-57-105, "no person or corporation shall, directly or indirectly, take or receive in money, goods, things in action, or any other valuable thing, any greater sum or value for loan or forbearance of money or goods, things in action, or any other valuable thing, than is prescribed in §4-57-104." Ark. Code Ann. §4-57-104 established the maximum rate of interest permitted as that amount set forth in the Arkansas Constitution.

40. Each Motor Vehicle Retail Installment Sales Contract facilitated and made by Santander includes a "loan or forbearance" for the purposes of Ark. Code Ann. §4-57-105.

41.     The interest rate, properly calculated, for each Motor Vehicle Retail Installment Sales Contract facilitated and made by Santander during the Class Period was greater than the maximum interest rate established by the Arkansas Constitution, as set forth above.

42.     Accordingly, each and every Motor Vehicle Retail Installment Sales Contract facilitated and made by Santander during the Class Period violated Ark. Code Ann. §4-57-105.

43.     Santander must forfeit both the principal and interest for each usurious loan it extended to Arkansas residents pursuant to the Motor Vehicle Retail Installment Sales Contract. *See Superior Improv. Co. v. Mastic Corp.*, 270 Ark. 471, 604 S.W.2d 950 (1980) ("The penalty for usury is forfeiture of both principal and interest.")

44.     For each violation set forth herein, Defendant is liable under Ark. Code Ann. §4-57-108 for reasonable attorney's fees and costs of prosecution.

## COUNT II
## Violations of the Arkansas Deceptive Trade Practices Act
## A.C.A § 4-88-101, et seq.

45.     Mr. Brunson incorporates by reference each of the foregoing allegations.

46.     Santander is a "person" for the purposes of the Arkansas Deceptive Trade Practices Act (ADTPA) pursuant to Ark. Code Ann. §4-88-102(5).

47.     Pursuant to Ark. Code Ann. §4-88-107(a)(10), it is unlawful for any person to engage in any unconscionable, false, or deceptive act or practice in business, commerce or trade.

48.     Each of Santander's violations of Arkansas's constitutional and statutory prohibitions against usury set forth above in the First Cause of Action is a violation of the ADTPA.

49.     Mr. Brunson and the Class Members have suffered actual financial losses as a direct consequence of Santander's extension of usurious consumer loans to them.

50. Mr. Brunson and the Class Members have a cause of action against Defendant pursuant to Ark. Code Ann. § 4-88-113(f)(1)(B) to recover damages as well as reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Brunson and the Class members demand a jury trial on all claims so triable; an order certifying the class, appointing Mr. Brunson as Class Representative and designating the undersigned counsel as Class Counsel; and judgment as follows:

1. That judgment be entered against Santander and in favor of Mr. Brunson and Class members on Count One and Count Two as alleged in this Complaint, and for actual, compensatory, and punitive damages in an amount to be determined at trial;

2. That judgment be entered imposing interest on damages, litigation costs and attorneys' fees against Santander; and

3. Such other relief as this Court deems just and proper.

DATED: September 21, 2017                 Respectfully submitted,

                                          /s/ Randall K. Pulliam
                                          CARNEY BATES & PULLIAM, PLLC
                                          Randall K. Pulliam
                                          Justin Craig
                                          519 West 7th Street
                                          Little Rock, Arkansas 72201
                                          (501) 312-8500 (Telephone)
                                          (501) 312-8505 (Fax)
                                          rpulliam@cbplaw.com
                                          jcraig@cbplaw.com

# EXHIBIT A

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____  Contract Number _____

| | |
|---|---|
| BUYER: DEXTER BRUNSON | SELLER/CREDITOR: SMART CHRYSLER |
| ADDRESS: 3603 COLONIAL AVE | ADDRESS: 2400 E. HARDING ST. |
| CITY: PINE BLUFF  STATE: AR  ZIP: 71601 | CITY: PINE BLUFF  STATE: AR  ZIP: 71601 |
| PHONE: (870) 718-3181 | PHONE: (800) 555-1212 |

CO-BUYER _____
ADDRESS _____
CITY _____ STATE _____ ZIP _____
PHONE _____

The Buyer is referred to as "you" or "your." The Seller is referred to as "we" or "us." This contract may be transferred by the Seller.
**PROMISE TO PAY:** The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown below. By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments in U.S. funds according to the Payment Schedule in this contract. If more than one person signs as a buyer, you agree to keep all the promises in this agreement even if the others do not.
You have thoroughly inspected, accepted, and approved the vehicle in all respects.

### VEHICLE IDENTIFICATION

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| 2010 | DODG | CHARGER | 2B3CK5CT1AH145685 | ☐ NEW ☐ DEMONSTRATOR ☐ FACTORY OFFICIAL/EXECUTIVE ☒ USED | PERSONAL, FAMILY, OR HOUSEHOLD, UNLESS OTHERWISE INDICATED BELOW. If either of the boxes below is checked, Chapter 353 of the Texas Finance Code applies to this Contract. ☐ BUSINESS OR COMMERCIAL ☐ AGRICULTURAL |

Trade-In: Make _____  Model _____
Year _____ VIN _____ License No. _____

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 2,300.00 |
|---|---|---|---|---|
| 20.619 % | $ 13,102.84 | $ 20,094.00 | $ 33,296.84 | $ 35,596.84 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 490.37 | Monthly beginning 05/16/2013 Or as follows |

**Late Charge:** If we do not receive your entire payment within 10 days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of 5% of the scheduled payment.
**Prepayment.** If you pay all that you owe early, you will not have to pay a penalty.
**Security Interest.** We will have a security interest in the vehicle being purchased.
**Additional Information:** See the document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including any accessories, services, taxes)
   N/A SALES TAX $ 303.00
   N/A $ N/A and $ N/A .................................. $ 22,393.00 (1)
2. Total Downpayment =
   - Gross Trade-In $ N/A
   - Pay Off Made By Seller $ N/A
   - Net Trade In $ N/A
   - Cash $ 2,300.00
   - Mfrs Rebate $ N/A
   - Other (describe) $ N/A
   Total Downpayment ........................................... $ 2,300.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) .................... $ 20,093.00 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts.):
   A. Net trade-in payoff to N/A .............................. $ N/A
   B. Cost of Optional Credit Insurance Paid to Insurance Company or Companies
      Life $ N/A
      Disability $ N/A ....................................... $ N/A
   C. Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   D. Official Fees Paid to Government Agencies
      1. to N/A for N/A $ N/A
      2. to N/A for N/A $ N/A
      3. to N/A for N/A $ N/A
   E. Debt Cancellation Agreement Fee Paid to the Seller ...... $ N/A
   F. Dealer's Inventory Tax (If Not Included in Cash Price) .. $ N/A
   G. Sales Tax (If Not Included in Cash Price) ............... $ N/A
   H. Other Taxes (If Not Included in Cash Price) ............. $ N/A
   I. Government License and/or Registration Fees ............. $ 1.00
   J. Government Certificate of Title Fees ................... $ N/A
   K. Government Vehicle Inspection Fees ..................... $ N/A
   L. Deputy Service Fee Paid to Dealer ...................... $ N/A
   M. Documentary Fee (Cargo Documental) ..................... $ N/A

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW.

UN CARGO DOCUMENTAL NO ES UN CARGO OFICIAL. LA LEY NO EXIGE QUE SE IMPONGA UN CARGO DOCUMENTAL, PERO ÉSTE PODRÍA COBRARSE A LOS COMPRADORES POR EL MANEJO DE LA DOCUMENTACIÓN RELACIÓN CON LA VENTA. UN CARGO DOCUMENTAL NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN SE EXIGE POR LEY.

N. Other Charges (Seller must identify who is paid and describe purpose.)
   to Plate Transfer Fee $ 1.00
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   Total Other Charges and Amounts Paid to Others on Your Behalf ... $ 1.00
5. Amount Financed (3 + 4) .................................... $ 20,094.00

**PROPERTY INSURANCE.** You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want to provide proof of insurance you already have. The insurer must be acceptable to us. Insurance is not purchased as to the business in Texas. You agree to give us proof of property insurance. You must name us as the person to be paid under the policy in the event of damage or loss.
If any insurance is checked below, policies or certificates from the insurance companies will describe the terms, conditions, and deductibles.

### Optional Credit Life and Credit Disability Insurance
Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Your decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

☐ Credit Life, one buyer $ N/A Term _____
☐ Credit Life, both buyers $ N/A Term _____
☐ Credit Disability, one buyer $ N/A Term _____
☐ Credit Disability, both buyers $ N/A Term _____

N/A
(Insurance Company)
_____
(Home Office Address)

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments.
If the term of the insurance is 121 months or longer, the premium is not fixed or approved by the Texas Insurance Commissioner.
You want the insurance indicated above.

X _____  _____
Buyer's signature          Date
X _____  _____
Co-Buyer's signature       Date

### Optional Insurance Coverages and Debt Cancellation Agreement
The granting of credit will not be dependent on the purchase of any insurance coverages or the debt cancellation agreement described below. If this will be provided unless you sign and agree to pay the extra cost. The insurer approved may not be canceled by creditor or not you buy these insurance coverages or the debt cancellation agreement.

| Coverage | Term in mo. | | Premium or Fee |
|---|---|---|---|
| GAP * | N/A | ☐ $ | N/A |
| N/A | N/A | ☐ $ | N/A |
| N/A | N/A | ☐ $ | N/A |
| Debt Cancellation Agreement * | N/A | $ | N/A |

_____
(Insurance Company)
_____
(Home Office Address)

*If the vehicle is determined to be a total loss, GAP insurance will pay the difference between the proceeds of your basic collision policy and the amount you owe on the vehicle, minus any deductibles. You can cancel this insurance without charge for 10 days from the date of this contract. **AMOUNTS YOU OWE UNDER THIS CONTRACT, IN THE CASE OF A TOTAL LOSS CANCELLATION OR OTHER PROVISIONS, THE DEBT CANCELLATION AGREEMENT** will change without charge for a period of 30 days from the date of the contract, or by the period stated in the debt cancellation agreement, whichever period ends later.
If we are required to premium for an insurance coverage included above, we affirm that the premium is not fixed or approved by the Texas Commissioner. A debt cancellation agreement is not insurance and is regulated by the Office of the Consumer Credit Commissioner.
For the premiums or fees included above, you want the related optional coverages and debt cancellation agreement.

X _____  _____
Buyer's signature          Date
X _____  _____
Co-Buyer's signature       Date

**LIABILITY INSURANCE: THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

### CONSUMER CREDIT COMMISSIONER NOTICE

To contact SANTANDER CONSUMER USA about this account, call (888) 549-9436. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N. Lamar Blvd., Austin, Texas 78705-4207, (800) 538-1579; www.occc.state.tx.us, and can be contacted relative to any inquiries or complaints.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

Any change to this contract must be in writing. Both you and we must sign it. No oral changes to this contract are enforceable.

Buyer X Dexter A. Brunson     Co-Buyer X _____

See back for other important agreements.
**CONSUMER WARNING:** Notice to the buyer—Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.
**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT:** YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.

Buyer Signs X Dexter A. Brunson Date 04/01/13  Co-Buyer Signs X _____ Date 04/01/13
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Date 04/01/13  Address _____
Seller signs SMART CHRYSLER Date 04/01/13  By X _____  Title F. Tosel
THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

Seller assigns its interest in this contract to Santander Consumer USA Inc., 8585 N Stemmons Frwy, Dallas, TX 75247, (214) 634-1110 (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse

Seller SMART CHRYSLER  By _____  Title F. Tosel

ORIGINAL LIENHOLDER

## OTHER TERMS AND CONDITIONS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **HOW WE FIGURE THE FINANCE CHARGE.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.
   b. **HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
      1. earned but unpaid finance charge; and
      2. to anything else you owe under this agreement.
   c. **HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge. If that happens, your last payment will be more than your final scheduled payment, or at our option, you will have to pay more payments of the same amount as your scheduled payment with a smaller last payment. If you make scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **INTEREST AFTER MATURITY.** If you do not pay all you owe when the final payment becomes due, or you do not pay all you owe if we demand payment in full under this contract, you will pay an interest charge on the amount that is still unpaid. That interest charge will be the higher rate of 18% per year or the maximum rate allowed by law, if that rate is higher. The interest charge for this amount will begin the day after the final payment becomes due.
   e. **TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.
   f. **SPECIAL PROVISIONS FOR BALLOON PAYMENT CONTRACTS.** A balloon payment is a scheduled payment more than twice the amount of the average of your scheduled payments, other than the downpayment, that are due before the balloon payment. You can pay all you owe when the balloon payment is due and keep your vehicle. If you buy the vehicle primarily for personal, family, or household use, you can enter into a new written agreement to refinance the balloon payment when due without a refinancing fee. If you refinance the balloon payment, your periodic payments will not be larger or more often than the payments in this contract. The annual percentage rate in the new agreement will not be more than the Annual Percentage Rate in this contract. This provision does not apply if your Payment Schedule has been adjusted to your seasonal or irregular income.

2. **YOUR OTHER PROMISES TO US**
   a. **USE AND TRANSFER OF THE VEHICLE.** You will not sell or transfer the vehicle without our written permission. If you do sell or transfer the vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00 ($50 for a heavy commercial vehicle). You will promptly tell us in writing if you change your address or the address where you keep the vehicle. We agree you may remove the vehicle from the U.S. for 72 hours or less, if the vehicle will continue to be covered by the insurance this contract requires. Otherwise, you agree not to remove the vehicle from the U.S. without our written permission.
   b. **CARE OF THE VEHICLE.** You agree to keep the vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the vehicle. You will keep the vehicle in good repair. You will not allow the vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the vehicle, we may pay the third party any cost required to free the vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the vehicle. If you do not pay this amount, we may repossess the vehicle and add that amount to the amount you owe. If we do not repossess the vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.
   c. **SECURITY INTEREST.** To secure all that you owe on this contract and all your promises in it, you give us a security interest in:
      1. The vehicle including all accessories and parts now or later attached and any other goods financed in this contract;
      2. All insurance proceeds and other proceeds received for the vehicle;
      3. Any insurance policy, service contract or other contract financed by us and any proceeds of those contracts; and
      4. Any refunds of charges included in this contract for insurance, or service contracts.
   This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the vehicle.
   d. **AGREEMENT TO KEEP VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle.
   e. **OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our file.
   f. **PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the vehicle, unless we agree otherwise in writing. However, if the vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

   g. **RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** If we get a refund on insurance or service contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.
   h. **APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.
   b. **DEFAULT.** You will be in default if:
      1. You do not pay any amount when it is due;
      2. You give false, incomplete, or misleading information on a credit application;
      3. You file bankruptcy, bankruptcy is filed against you, or the vehicle becomes involved in a bankruptcy;
      4. You allow a judgment to be entered against you or the collateral; or
      5. You break any of your promises in this agreement.
   If you default, we can exercise our rights under this contract and our other rights under the law.
   c. **OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.
   d. **REPOSSESSION.** If you default, we may repossess the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If any personal items are in the vehicle, we can store them for you and give you written notice at your last known address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the vehicle.
   e. **YOUR RIGHT TO REDEEM.** If we take your vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.
   f. **DISPOSITION OF THE VEHICLE.** If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. We will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.
   g. **COLLECTION COSTS.** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows. You will also pay our reasonable out-of-pocket expenses incurred in connection with retaking, holding, and selling the vehicle as the applicable law allows.
   h. **CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS.** This contract may contain charges for insurance or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **INTEGRATION AND SEVERABILITY CLAUSE**
   This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

5. **LEGAL LIMITATIONS ON OUR RIGHTS**
   If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

6. **SELLER'S DISCLAIMER OF WARRANTIES**
   Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

7. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

8. **APPLICABLE LAW**
   Federal and Texas law apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

This PROVISION applies to this contract only if the vehicle financed in the contract was purchased for personal, family, or household use.

Form No. 553-TX-SCUBA 5/12